Good morning, your honors. My name is Joseph McMullen, and I represent Mr. Toson, the appellant in this case. There are two major problems with the district court's decision. First, Mr. Toson could not have violated a condition of supervised release ordering penological drug testing because that condition was never ordered. But he certainly violated the condition that he not used drugs. Well, your honor, that wasn't something that was litigated below. He didn't have notice under Rule 32.1 that he had violated that condition. He only had notice. I thought he was charged with that in the allegation to the basis for revocation. The allegation that was set forth was the mandatory drug testing condition. Now, the first part of that condition does say that he must refrain from any unlawful use of a controlled substance. But that condition is the verbatim condition that is set forth in Rule 3583D as amended by the Violent Crime Control and Law Enforcement Act of 1994, which said that that mandatory condition only becomes a condition if it is explicitly ordered as a mandatory condition. Mr. Hunt, I have a great deal of trouble kind of getting my brain around your position. I understand that you're saying, look, the probation office charged a violation of the condition that's in the language of the amended statute, 3583D. That's correct. But that wasn't the language of the condition that was actually imposed. Well, that is correct, Your Honor. Okay. But that's sort of like step one of your argument. That's right. So then you look at the condition that was actually imposed, which is pretty much in the language of Stevens. It's a mandatory condition of participating in a program of drug treatment, including testing and counseling as directed by the probation officer. Correct. Okay. And it has a problem, a Stevens problem, in that it doesn't cap the number of tests that the probation officer could direct in a non-treatment related penological setting. But the general order, which was issued before supervised release began, cured that problem. So what's left? This is why the general order didn't cure the problem here. And that is because the only type of testing that was ever ordered in this case was treatment related testing. Well, I mean, treatment can be all sorts of things. Treatment is just abstained from drugs. And we're going to treat your drug problem. You don't need to go into a two-year, you know, in-house program. You just need to be told abstain from use of controlled substances. And we're going to monitor that treatment by testing. And you can't do that unless it's capped for a month. The problem with that, Your Honor. Do you agree that abstention is treatment? I'm sorry? Do you agree that abstention is treatment? Yes, Your Honor. I would agree that that's treatment. But the problem is that the district court below, in ruling on the motion to dismiss, in its order, said that this is penological testing and that the penological testing applies. So what? I mean, that's why I'm not being, you know, nasty with you. I just want to know the so what. So the so what of that is that the district judge was incorrect because there was never penological testing that was authorized in this case. 3583D said that it has to be. That's where I just – it's articulating the same words, but why not? The reason it's not is because 3583D is explicit. But this isn't a 3583D – it's a condition of mandatory release. We all know that the language of 3583D wasn't used. Well, we colloquially call it mandatory, but the fact is – Colloquially it says shall. As Stephen said, with respect to the same language, shall means shall. It's mandatory. It's a mandatory condition, and that's what triggered the constitutional infirmity in Stephen's. But it does not automatically become part of supervised release. It must be explicitly ordered, and it wasn't ordered here. The defendant shall comply with the following additional conditions. Participate in a program of drug and alcohol treatment, including testing and counseling as directed by a probation officer. Absolutely. We need to draw the distinction, the same distinction that Stephen's drew, between penological testing and treatment testing. Well, but you're just using words. It could be both, as Stephen's recognized. You can have penological testing, or you can have non-penological testing. And if it's penological testing, it's got to be capped. That is true. But here, because the district court stopped and said this is penological testing, and the penological testing was capped at four, the district court was wrong that penological testing was never even authorized. So if there's a finding that it was penological – You just don't get that. He authorized a program of treatment, including testing. Exactly. And that treatment testing is only – Now at least I understand your position. Well, let me see if I understand it. You're saying authorized only treatment testing. Exactly. And – What's the difference between the two? The difference between the two is, one, I believe the difference has to be in the administration of it. Stephen's court was very clear that a probation officer can be delegated the responsibility to direct and select a treatment program, but only drug treatment program professionals can then determine the amount of in-testing. Sure, but Stephen's recognizes that a probation officer can direct testing. It's just if he does, outside of a professionally supervised setting, if he does, he can only do it four times a month. That's right. But in this case, this probation officer wasn't allowed to do those four times a month because Mr. Tosin had never been ordered to comply with the mandatory drug testing condition. His sentence occurred in 1995, soon after the amendment, and the judgment is very clear in 1995 that it didn't order this new condition. It does not automatically become part of supervised release unless it is explicitly ordered as 35 days. You have only two minutes left. I'd like to go back to my question originally, or Judge Ramey's question. The allegation of noncompliance is that he used a controlled substance. That's allegation number two and allegation number three. Now, I don't know on a fact show he used a controlled substance. That is not an allegation of failure to comply with the drug testing. Number three is an allegation of failure to comply with drug testing. The problem is, Your Honor, as in the Javier case, is that because the petition said that this is a violation of the mandatory penological drug testing condition, then the way that defense counsel proceeded there is not the way that it would have proceeded if there had been, one, an allegation that he violated a treatment-related condition. It's not an allegation he violated any particular kind of treatment of a testing program. It's an allegation that he used a controlled substance. And again, Your Honor, defense strategy there, if there would have been just a violation of, I believe it was condition number eight, which is just refrain from drug use, would have been different as well. We would have had the opportunity to... Well, I'm sorry if you misread the charge, but the charge is used a controlled substance. The charge, Your Honor, is the exact language that is suggested in Stevens as being a penological drug testing condition. In this case, it was a condition that was never ordered in FBI law. I don't know. You say that allegations one and two, used a controlled substance, is what Stevens says it can't be a charge? I thought Stevens had to do with the requirement of drug testing. Your Honor, using a controlled substance could certainly be a charge. But here, because... It's a bad charge. It says Mr. Tosin used a controlled substance. But that's in reference to a violation of the mandatory condition on the same part of the petition. It's saying allegations one, two, and three are violations of that mandatory condition. We move to dismiss because that penological drug testing... Well, the mandatory condition is first sentence is refrained from any unlawful use of a controlled substance. That's the first sentence of the mandatory condition. That's right, Your Honor. But the only evidence that we have supporting that is that he tested positive, that he had positive tests or failed to test in violation of the penological drug testing condition. But that's simply used as proof of the first charge. Exactly. We can't use as proof something that was basically collected in violation of Stevens. That's a violation that's of constitutional magnitude. As the Stevens court said, you cannot delegate to probation officers this authority to determine the extent or nature of punishment. And here, that delegation didn't occur. The second issue, Your Honor, and I only have a limited amount of time to address it, is the... Right here. Oh. It looks like I'm over 40 seconds. Right. Thank you, Your Honor. Thank you, counsel. But they hinged it to this condition. That condition wasn't in the supervised rules. No. Okay. May it please the court, good morning. My name is William Hall. I'm an assistant United States attorney in the Southern District of California, and I'm counsel of record for the appellee in this case, the United States of America. Much of my argument this morning was going to be along the lines of the interaction that the court had with Mr. McMullen. So I would like to address that in brief, but I think a lot of the points I was going to articulate were already brought to the fore, which is essentially what was the subject of my 28-J letter, which is that in this instance, the allegation that Mr. Tosin's alleged to have violated, at least, of two of those first allegations regarding drugs is that he used a controlled substance, and it's clear from the record that he used a controlled substance. He tested positive twice for a controlled substance, and the court properly found him in violation of those allegations on that basis. Counsel, the last point that your opposing counsel made was that we can't use the evidence that came from an illegal test. Now, is that the case? Let's assume for the moment that it was an illegal test. Essentially, what the counsel's arguing for is the extension of Stevens. Assuming all of that, Stevens never said necessarily that there's a suppression remedy for a test that was not authorized by the court. Now, this court, in a factual situation where this is an issue, might come to the conclusion in the future that it is. But in this case, the record is rather clear that this was part of Mr. Tosin's treatment program. Well, that's a different question. Let's leave that aside. Let's assume that there's a problem with the order that he submitted to the drug test, and Judge Fletcher's question is, if he did violate the order that he not use drugs, and they got that evidence through drug testing, which was not properly ordered, let's assume all of those things, is there an automatic reversal because it was obtained that way? Your Honor, since this is the first time that this issue has come up in this case, I'm essentially talking off the top of my head with regards to this issue. But that said, I don't think necessarily that's the case. And one of the reasons for that is, if we again look back at the Violent Crime and Control Act, which made it a mandatory condition of probation that a defendant is subject to drug testing. Now, whether the defendant in this case had notice of that or not, he showed up for the tests. That's not answering the question, but all right. Let me ask you another question. I don't think you allege that this sentence could be upheld on the basis of the failure to report for interviews. Is that correct? Your Honor, that would be our argument. What we have here are Well, did you or didn't you? If that's a yes, no. I believe that we did in our brief. My memory isn't 100% sure about that. But defense counsel in their opening brief conceded that that was an appropriate violation, that they weren't challenging that last allegation. Well, why doesn't that dispose of the case? I believe that it does, Your Honor. We have seven grade C violations here. We have a sentencing range of eight to 14 months. The judge sentenced the defendant to the middle of that range. It's not like we're talking about one grade A and two grade B violations here. All of the violations are of the same dimension. I don't think there's any indication in the record that the judge would have sentenced the defendant any differently by the number of allegations that he found the defendant guilty of here. And I think on that basis alone, Judge Thompson's decision could be sustained in that defense counsel conceded in his opening brief that the allegation with regards to the failure of report was not being challenged. Again, just as a matter to conclude, Mr. Tosin never objected to this condition when it was imposed. In 1995, he never objected to this condition with regards to the testing and treatment in the course of the treatment program at the time when it was reimposed when he was put into a community correction center. He only challenges it now that he's been found in violation of the condition that he not use a controlled substance. As the Court is well aware, in this type of context, where he failed to object, this is subject to plain error analysis and clearly the Court was within its discretion to violate Mr. Tosin. They also charged him with consorting with felons. Isn't that correct? That is correct, Your Honor. It wasn't a charge that it was a knowing consorting with felons. Is that necessary? I don't think the Ninth Circuit has not specifically ruled on that issue. I don't think we need to reach that issue because I believe Judge Thompson in his findings actually did find that. He said from common sense he did not believe that the defendant was not aware of the backgrounds of the people that he was found with. Beyond that, I submit on my brief. I think that's a factual question as to whether the evidence to support those allegations is sustainable based on an abuse of discretion standard. But I believe my recollection of the record is that Judge Thompson, in fact, even if a knowledge requirement was not explicit, did find that the defendant under the circumstances didn't know who he was associating with.  Thank you. I'm going to come up for one minute. I have a question in any event. Thank you, Your Honor. Your client was convicted of one or more violations relating to failure to report, and that's not challenged. That's correct, Your Honor. And why isn't that enough to sustain the revocation order? Your Honor, I think that this needs to be remanded for resentencing because, one, I think the same analysis holds true as the Bennett type of unbundling analysis in the conviction context. But, two, I think we can look to the court's decision in Comito. In Comito, now, of course, there we had a grade B violation overturned. But these violations are all the same category. That's true. But the analysis is the same because in Comito, the sentence that was ultimately given was even higher than the grade B range. And what we had there was a judge who clearly was expressing frustration with the number of violations. Here we have the same thing. We have a spectrum of violations, and I think that the egregiousness of failing to submit monthly reports when their whereabouts are known in a community correction center is far down the scale compared to the associated or drug testing condition. And the judge did express frustration with this multiple violations. And because of that, it should be remanded for resentencing if there's a finding that the more egregious grade C violations took place. Further, the probation officer, this is a little less persuasive, but the probation officer's written recommendation to the judge was that he be sentenced to six months. And the judge, although within the policy statement guideline range, sentenced him to 11 months, it was certainly almost twice the sentence that the probation officer had recommended. And I think, again, that's because of the more egregious grade C violations that were mistakenly found to have occurred. Thank you, counsel. Thank you, Your Honor. The case disargued will be submitted.
judges: Fletcher, Reinhardt, Rymer